IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADVANCED FLUID SYSTEMS, INC.,** | : | CIVIL ACTION NO. 1:13-CV-3087 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **KEVIN HUBER, INSYSMA (INTEGRATED SYSTEMS AND MACHINERY, LLC), LIVINGSTON & HAVEN, LLC, CLIFTON B. VANN IV, and THOMAS AUFIERO,** | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

Before the court are three motions (Docs. 413, 415, 419) seeking review of various aspects of the Clerk of Court's taxation of costs. The court will grant in part and deny in part the pending motions.

### I.  **Factual Background and Procedural History**

The factual background and procedural history of this case are detailed at length in the prior opinions of this court and in the Third Circuit Court of Appeals' comprehensive opinion in Advanced Fluid Systems, Inc. v. Huber, 958 F.3d 168 (3d Cir. 2020). We incorporate that background in full. As before, we refer to plaintiff Advanced Fluid Systems, Inc., as "AFS"; to defendants Livingston & Haven, LLC, Clifton B. Vann IV, and Thomas Aufiero collectively as "the Livingston defendants"; to defendant Kevin Huber as "Huber"; and to defendant Integrated Systems and Machinery, LLC, as "Integrated Systems."

The court of appeals issued its mandate on June 5, 2020.  The Clerk of Court thereafter issued a taxation of costs.  All parties have filed motions objecting to various aspects of the Clerk's taxation.  (See Docs. 413, 415, 419).  The motions are fully briefed and ripe for disposition.

## II.     Legal Standard

The Federal Rules of Civil Procedure provide that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(1).  Rule 54(d)(1) creates a "strong presumption" in favor of awarding allowable costs.  See Reger v. The Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 462 (3d Cir. 2000)).  A court may, in its discretion, reduce or deny allowable costs, so long as it "articulate[s] reasons within the bounds of its equitable power" for doing so.  See In re Paoli, 221 F.3d at 468; see also Reger, 599 F.3d at 288.  The scope of taxable costs is set forth by statute, see 28 U.S.C. § 1920, and expanded upon in our Local Rules of Court, see M.D. PA. L.R. 54.4.  The Clerk of Court is responsible for the initial taxation of costs, which may be appealed to the district court within seven days.  See FED. R. CIV. P. 54(d)(1).

## III.    Discussion

AFS filed a bill of costs in the amount of $40,360.49.  (See Doc. 341).  On June 10, 2020, the Clerk of Court issued its taxation of costs, authorizing certain costs, disallowing others, and taxing total costs of $19,999.86 in favor of AFS and against all defendants.  (See Doc. 412 at 2).  AFS appeals the Clerk's disallowances of third-party copying and file-format conversion fees.  (See Doc. 414 at 3-12).  The

2

Livingston defendants, Huber, and Integrated Systems jointly oppose AFS's appeal, (see Doc. 424 at 4-9), and separately appeal the Clerk's allowance of private process server costs and certain deposition-related charges and fees, (see Doc. 416 at 4-10; Doc. 418 at 1-2).

Allowable costs are set forth in Title 28, Section 1920 of the United States Code. See 28 U.S.C. § 1920. Section 1920 establishes six categories of allowable costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title; [and]
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Id. Local Rule of Court 54.4 incorporates and elaborates upon Section 1920 and identifies examples of taxable items within each of these categories. See M.D. PA. L.R. 54.4. Against this backdrop, we address the parties' appeals *seriatim*.

A. **AFS's Appeal**

AFS challenges the Clerk's disallowances in just one category: Section 1920(4), which authorizes the Clerk to tax "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use

3

in the case." See 28 U.S.C. § 1920(4); (see also Doc. 414 at 3-11). In this category, AFS sought reimbursement of $21,119.37 in costs, as follows: $6.50 for a copy of a Virginia state court complaint used at trial; $1,042.74 for four complete sets of trial exhibits ordered by the court; $10.50 for a copy of a deposition requested by the court during trial; $782.06 for sets of exhibits used at depositions; $11,301 for file-format conversion by AFS's e-discovery vendor; $471 for conversion of videotapes to DVD format; $7,099.82 for third-party file-format conversion and copying in response to subpoenas; $97 for third-party copying services; and $308.75 for in-house scanning. (See Doc. 341 at 7-11 ¶¶ 15-21). The Clerk disallowed $11,301 and $471 file-format conversion fees, $7,099.82 and $97 fees for third-party file-format conversion and copying, and $308.75 in-house scanning costs. (Doc. 412 at 1-2).

AFS appeals all but the scanning disallowance, invoking our court of appeals decision on e-discovery costs in Race Tires America, Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012). (See Doc. 414 at 3-11). Defendants do not dispute that Race Tires allows taxation of electronically stored information ("ESI") conversion costs that are "the functional equivalent of 'making copies.'" See Race Tires, 674 F.3d at 161, 171 n.11; (see also Doc. 424 at 4-9). Rather, they contend that AFS has not shown that these costs were incurred for copies "necessarily obtained

4

for use in the case" or, for some costs, that they were obtained for anything akin to "copying" at all.[1]  (See Doc. 424 at 4-9).

We agree with AFS to the extent it perceives error in the Clerk's blanket statement that "electronic file format conversion fees . . . are not allowed as taxable under 28 U.S.C. § 1920 and the Local Rules of Court."  (See Doc. 412 at 1-2).  That conclusion is inconsistent with Race Tires, which authorizes taxation of costs for "scanning and conversion of native files to the agreed-upon format for production of ESI."  See Race Tires, 674 F.3d at 161, 167.  Because the Clerk erroneously found that such costs were not taxable, the Clerk did not further consider whether the file-format conversion costs were "necessarily obtained for use in the case."  (See Doc. 412 at 2); see also 28 U.S.C. § 1920(4).  We find that most of them were.

AFS has submitted a declaration and additional evidence elaborating upon each of the disallowed conversion and copying items in its bill of costs.  (See Doc. 341 at 9-10 ¶¶ 18-20; Docs. 414-1, 414-2, 414-3, 414-4).  AFS explains that the $11,301 figure is the amount paid to its e-discovery vendor, MCS Group, to "[c]onvert native files to another format such as TIFF."  (Doc. 414 at 5-6; see also Doc. 414-1 at 2, 3).  According to MCS Group, its database reflects that 424,827 total pages of documents were provided to it; of those, 238,120 pages were attributable to AFS; 48,483 to the

---

[1] Only the Livingston defendants submitted pretaxation objections to AFS's bill of costs.  (See Doc. 410).  Curiously, the Livingston defendants did not object to the $11,301 file-format conversion fee in its objections, nor to the $97 fee to Verizon for copying and transferring Huber's cellular telephone records to CD format for production.  (See id. ¶¶ 8-10).  The Livingston defendants oppose those requests for the first time in response to AFS's appeal to this court.  (See Doc. 424 at 5-6, 9).

Livingston defendants, 117,260 to Integrated Systems, and 20,964 to dismissed defendant Orbital Sciences. (See Doc. 414-1 at 1-2). AFS's counsel explained in a sworn declaration submitted with its earlier motion for attorney's fees that review of these documents allowed AFS to establish the detailed timeline that was crucial to the court's rulings at the summary judgment stage and at trial. (See Doc. 334-2 ¶¶ 26-28). Having worked with the summary judgment record and presided over the six-day bench trial in this case, the court is well familiar with how document-intensive this litigation was and, relatedly, how critical the file conversion services were to the orderly and efficient presentation of evidence. We have little difficulty finding these file-format conversion services were "necessarily obtained for use in the case." See 28 U.S.C. § 1920(4).

We also easily conclude that the $97 fee paid by AFS to Verizon for copying Huber's cell phone records is taxable under Section 1920(4). AFS explains that Verizon charged $97 "for copying and transferring its records to CD format for production," (see Doc. 341 at 10 ¶ 20), and it has submitted an invoice from Verizon reflecting the $97 cost, (see Doc. 414-4 at 2). Verizon's invoice does not explicitly state that its charges were essential for copying and instead only notes that it performed one hour of work, (see id.; see also Doc. 424 at 9), but we have no reason to doubt the representation of counsel that Verizon in fact copied and transferred the records to CD format, (see Doc. 341 at 10 ¶ 20). Defendants apparently do not dispute that these records were necessarily obtained for use in the case, nor could they: Huber's cell phone records—and, in particular, his "regular and lengthy phone calls with Livingston's engineers" while still employed by AFS—were an

6

important aspect of AFS's successful trial theory.  See Advanced Fluid Sys., Inc. v. Huber, 295 F. Supp. 3d 467, 479 (M.D. Pa. 2018).

Finally, defendants do not oppose AFS's appeal of the disallowed $471 fee for file-format conversion.  (See Doc. 424 at 3).  That fee reflects the amount charged by Capitol Support Services—whose employee, Andy Schroder, expertly assisted with exhibit display throughout trial—for its work in "converting DVDs to digital file for synchronization & display during trial."  (See Doc. 414-3 at 1).  These costs are taxable.  See Race Tires, 674 F.3d at 161, 167.  We will thus grant AFS's motion as to the $11,301 file-format conversion fee to MCS Group, the $97 copying fee to Verizon, and the $471 file-format conversion fee of Capitol Support Services.

We will deny AFS's motion, however, to the extent it seeks taxation of $7,099.82 paid to the engineering firm Dayton T. Brown ("Brown") that previously employed Huber.  (See Doc. 341 at 10 ¶ 20).  AFS indicates that it served subpoenas on Brown for business records and that Brown's bill for $7,099.82 was "limited to making the copies."  (See Doc. 414 at 7-8).  Yet the response from Brown's general counsel indicates that it billed for costs of copying "*and* organiz[ing] the material."  (See Doc. 414-2 at 4 (emphasis added)).  The response also suggests that Brown duplicated its efforts, stating that "w[h]ere it was practical[,] paper copies *and* digital copies" of documents were provided.  (See id. (emphasis added)).  AFS does not differentiate between copying costs (which are taxable) and organizing costs (which are not).  See, e.g., Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc., No. 11-3962, 2016 WL 660601, at *10-11 (D.N.J. Feb. 18, 2016) (collecting cases and explaining that costs of Bates labeling, collating, binding, sorting, and filing of

7

copied documents are not taxable under label of "making copies"). Nor does AFS attempt to proportionately reduce its request to reflect the apparent duplication of effort in providing both print *and* digital copies, or to explain why production in both formats was necessary. (See Doc. 414 at 7-8; see also Doc. 412 at 2).

Moreover, Huber's dual employment with Brown was of only tangential relevance to the case. See Advanced Fluid Sys., 295 F. Supp. 3d at 495 (noting in punitive damages analysis that Huber's dual employment with AFS and Livingston was not his first such offense). Only two of AFS's hundreds of trial exhibits came from Brown's expensive production. (See Doc. 414 at 7). We are also inclined to agree with defendants that the rate charged by the employee who did the copying and organizing—$150.84 per hour—seems high. (See Doc. 424 at 7; see also Doc. 414-2 at 5, 14). All of this is to say that taxation of *some* of Brown's copying costs may have been appropriate here. But, as the prevailing party who "knows the purpose of its copies," it is AFS's burden to show which of those copies "were necessarily obtained for a reimbursable use in this case." See Prometheus Labs., Inc. v. Roxane Labs., Inc., No. 11-230, 2016 WL 1559144, at *9 (D.N.J. Apr. 18, 2016) (citation omitted); see also 28 U.S.C. § 1920(4). It has failed to do so. We will thus deny AFS's motion to the extent it seeks review of the Clerk's disallowance of $7,099.82 for Brown's services.

    **B.    Defendants' Appeals**

All defendants appeal two allowances in the Clerk's taxation: $1,605 for private process server fees, and $342.45 for nontaxable court reporter fees. (See Doc. 416 at 4-7, 9-10; Doc. 419 at 1). The Livingston defendants separately appeal

8

an additional $353.95 in court reporter deposition charges for two depositions and $230 in court reporter appearance fees. (See Doc. 416 at 7-9, 10). AFS concedes the $342.45 cost (for delivery, shipping and handling, and certain "administrative" court reporter fees) is not taxable under Section 1920(2), (see Doc. 420 at 12), so we will grant defendants' motions to that extent as unopposed. We address the balance of defendants' arguments in turn.

### 1. *Private Process Server Costs*

Defendants first challenge the Clerk's taxation of $1,605 in service fees for private process servers pursuant to 28 U.S.C. § 1920(1). (See Doc. 416 at 4-7; Doc. 419 at 1). Defendants contend that Section 1920(1) expressly encompasses only "[f]ees of the clerk and marshal" and does not speak to fees of private process servers. (See Doc. 416 at 4-7); see also 28 U.S.C. § 1920(1).

Our court of appeals has not addressed whether private process servers' fees are taxable under Section 1920(1). AFS asks us to follow the Ninth Circuit Court of Appeals' decision in Alflex Corp. v. Underwriters Laboratories, Inc., 914 F.2d 175 (9th Cir. 1990) (*per curiam*), wherein the court reasoned that,

> [i]n making Marshal's fees taxable as costs in section 1920(1), we believe Congress exhibited an intent to make service of process a taxable item. Since the enactment of section 1920(1), the method of serving civil summonses and subpoenas has changed. The U.S. Marshal no longer has that responsibility in most cases, but rather a private party must be employed as process server. Now that the Marshal is no longer involved as often in the serving of summonses and subpoenas, the cost of private process servers should be taxable under 28 U.S.C. § 1920(1).

9

Alflex, 914 F.2d at 178 (citations omitted). Several courts, including district courts within this circuit, have applied this reasoning and authorized taxation of private process server costs. See, e.g., Hurley v. Atl. City Police Dep't, No. 93-260, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996); Griffith v. Mt. Carmel Med. Ctr., 157 F.R.D. 499, 507-08 (D. Kan. 1994); Roberts v. Homelite Div. of Textron, Inc., 117 F.R.D. 637, 641 (N.D. Ind. 1987).

Other courts have disagreed with Alflex's rationale but nonetheless held that process server costs are taxable on the theory that Section 1920(1) "permit[s] an award of costs *measured by* the marshal's fees, whether or not the prevailing party *used* the marshal." See Collins v. Gorman, 96 F.3d 1057, 1060 (7th Cir. 1996) (noting statute refers to fees "of" the marshal not "to" the marshal); U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 624 (11th Cir. 2000) (following Collins); see also U.S. for the Use & Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 172 (2d Cir. 1996) (recognizing this as "the most persuasive basis for allowing the award of private process server fees" but holding "this interpretation does not mandate that the court's discretion be exercised in that fashion"). This approach rests on a perceived "ambiguity" in the text of Section 1920 and "resolve[s] [it] in favor of permitting the prevailing party to recover service costs." See Collins, 96 F.3d at 1060.

Still other courts, again including district courts within this circuit, have disallowed taxation of private service fees, finding no support for recovery of those costs in Section 1920(1). See, e.g., Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985) (citing Zdunek v. Wash. Metro. Area Transit Auth., 100 F.R.D. 689, 692 (D.D.C.

10

1983)); Francisco v. Verizon S., Inc., 272 F.R.D. 436, 442 (E.D. Va. 2011) (citation omitted); In re D&B Countryside, L.L.C., 217 B.R. 72, 77-78 (E.D. Va. Bankr. 1998); Pion v. Liberty Dairy Co., 922 F. Supp. 48, 53 (W.D. Mich. 1996); Goldstein v. GNOC, Corp., No. 90-0496, 1994 WL 456360, at *2-3 (E.D. Pa. Aug. 22, 1994). These courts adhere tightly to the plain and, in their view, unambiguous language of Section 1920(1). See, e.g., In re D&B Countryside, 217 B.R. at 77-78 (holding that "[t]he subsection is clear on its face and it must be applied as written").

We agree with the courts to hold that Section 1920(1) does not permit taxation of private process server fees. In reaching that conclusion, we decline to follow Alflex for a few reasons. First, we note that Alflex involved an additional layer not present here: the local rules in the subject jurisdiction expressly allowed taxing as costs the "[f]ees for service of process (*whether served by the United States Marshal or other persons authorized* by FED. R. CIV. P. 4." See Aflex, 914 F.2d at 176 (citing C.D. CAL. L.R. 16.4.2) (emphasis added). Our local rules allow taxation of "[c]lerk's fees (see 28 U.S.C. § 1920) and service fees," without expressly limiting this authorization to service fees of the marshal or expanding it to service fees of those other than the marshal. See M.D. PA. L.R. 54.4(1). We will not read our Local

Rules as authorizing broader taxation than that clearly permitted by Congress without an explicit indication of intent to do so.[2]

Second, and more importantly, we disagree with what <u>Alflex</u> considered to be the congressional intent behind Section 1920(1). The court concluded that, by "making Marshal's fees taxable as costs in section 1920(1), we believe Congress exhibited an intent *to make service of process* a taxable item." See <u>Alflex</u>, 914 F.2d at 178 (emphasis added). We read Section 1920(1) differently—as being principally concerned with taxing costs imposed by a particular *entity* (the government, via "the clerk and the marshal") rather than costs of a particular *type*. <u>See</u> 28 U.S.C. § 1920(1). Viewed in this light, there is no support in the plain text of Section 1920(1) for taxation of costs paid to private process servers.

Finally, we disagree with those courts that have found an "ambiguity" in Section 1920(1) and resolved it in favor of taxing private process server costs. <u>See</u> <u>Collins</u>, 96 F.3d at 1060. We perceive no ambiguity in the phrase "[f]ees of the clerk and marshal," much less one that would permit us to read "fees of private process servers" into the statute. <u>See</u> 28 U.S.C. § 1920(1); <u>see also</u> <u>Cofield v. Crumpler</u>, 179 F.R.D. 510, 515-16 (E.D. Va. 1998). Moreover, although Rule 54(d)(1) establishes a "strong presumption" in favor of awarding *allowable* costs, <u>see</u> <u>Reger</u>, 599 F.3d at

---

[2] We express no opinion as to whether a district court could, by local rule, expand taxable costs beyond those authorized by Congress under Section 1920. We observe only that the United States Supreme Court's decision in <u>Crawford Fitting Co. v. J. T. Gibbons, Inc.</u>, 482 U.S. 437 (1987), suggests not. <u>See</u> <u>Crawford Fitting</u>, 482 U.S. at 443 (rejecting petitioners' argument "that courts . . . have discretion to tax as costs expenses incurred beyond those specified by Congress as fees in § 1821, and made taxable by § 1920").

288 (quoting In re Paoli R.R. Yard PCB Litig., 221 F.3d at 462), it does not follow that we must presume all costs to be allowable in the first instance.  Indeed, the Supreme Court emphasized in Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560 (2012), that it has "never held that Rule 54(d) creates a presumption of statutory construction in favor of the broadest possible reading of the costs enumerated in § 1920."  Taniguchi, 566 U.S. at 572-75.  *Per contra*, the Court has "made clear that the 'discretion granted by Rule 54(d) is not a power to evade' the specific categories of costs set forth by Congress."  Id. (quoting Crawford Fitting, 482 U.S. at 442).  To read Section 1920(1) to include private process server fees, when its plain terms speak only to the clerk and the marshal, would be inconsistent with the "narrow reading" the Supreme Court accords to Section 1920.  See Race Tires, 674 F.3d at 171 (citing Crawford Fitting, 482 U.S. at 442); see also *In re* D&B Countryside, 217 B.R. at 78.

For all of these reasons, we hold that Section 1920(1) does not authorize taxation of costs for fees incurred by private process servers.  We recognize that the manner of effecting service in federal courts has changed, with private process servers now carrying the bulk of that burden.  But the language of Section 1920(1) has not.  It is for Congress, not this court, to rewrite Section 1920(1) to reflect the realities of modern federal practice.  See Bunda v. Potter, No. C03-3102, 2006 WL 266513, at *6 (N.D. Iowa Jan. 31, 2006); Cofield, 179 F.R.D. at 516.  We will grant defendants' motions to this extent.

### 2. *Court Reporter Fees*

The Livingston defendants alone appeal the Clerk's taxation of $353.95 in court reporter deposition charges for depositions they believe were unnecessary and $230 in court reporter deposition appearance fees they believe are not taxable. (See Doc. 416 at 7-9, 10). We will deny the Livingston defendants' motion as to both of these requests.

The Livingston defendants first object to taxation of court reporter deposition charges associated with two deponents: Glenn Jackson and Jonathan Quinones. (See Doc. 416 at 7-9). The Livingston defendants contend that AFS has not shown that these depositions "were expected to be used for trial preparation rather than for merely investigatory or discovery purposes."[3] (See id. at 8). We disagree.

Court reporter deposition charges are taxable under Section 1920(2) as "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." See 28 U.S.C. § 1920(2). A deposition does not need to be used "at trial" for the deposition charge to be taxable. See In re Baby Food Antitrust Litig., 166 F.3d 112, 138-39 (3d Cir. 1999); In re Aspartame Antitrust Litig., 817 F. Supp. 2d 608, 617 (E.D. Pa. 2011). The test is whether the depositions "appear reasonably

---

[3] We note that the Livingston defendants' argument ignores our Local Rules of Court, which interpret Section 1920(2) to apply to all court reporter deposition fees, "whether or not the same is actually received into evidence, *and whether or not it is taken solely for discovery*, regardless of which party took the deposition." M.D. PA. L.R. 54.4(3) (emphasis added). Regardless, as discussed *infra*, AFS has shown that these depositions were necessarily taken as part of its summary judgment and trial preparations.

necessary to the parties in light of the particular situation existing at the time they were taken." Stevens v. D.M. Bowman, Inc., No. 07-2603, 2009 WL 117847, at *3 (E.D. Pa. Jan. 15, 2009) (quoting Montgomery County v. Microvote Corp., No. 97-6331, 2004 WL 1087196, at *8 (E.D. Pa. May 13, 2004)); see In re Aspartame, 817 F. Supp. 2d at 617 (quoting Stevens, 2009 WL 117847, at *3).

We conclude that AFS reasonably believed both of the challenged depositions were necessary in light of the situation that existed at the time they were taken. AFS explains that its attorneys deposed Glenn Jackson, a Livingston employee, because he was named in an email coordinating a trip to the Wallops Island NASA facility—a trip that was central to the trial narrative and an accelerator in Huber's duplicitous relationship with Livingston. (See Doc. 420 at 10); see also Advanced Fluid Sys., 295 F. Supp. 3d at 474-76. The email indicated Jackson would be attending that trip. (See Doc. 420 at 10). It is of no moment that Jackson's testimony "ultimately turned out not to be necessary." (See id.) AFS reasonably considered his testimony to be necessary at the time, and that is all Section 1920(2) requires. See In re Aspartame, 817 F. Supp. 2d at 617 (quoting Stevens, 2009 WL 117847, at *3).

We also conclude that AFS reasonably believed Quinones' deposition testimony to be necessary for use in the case. According to AFS, at some point in the litigation, Huber claimed that it was Quinones, not AFS, who wrote computer code for the Teleporter/Erector/Launcher Hydraulic System that was a focal point of this case. (See Doc. 420 at 10-11). Huber apparently also sought to establish that AFS had not asked Quinones to sign a nondisclosure agreement and intended to

15

use that information to dilute AFS's claim that certain drawings and materials relating to the system were trade secrets. (See Doc. 410 at 11). AFS explains that Quinones' testimony "undercut the points Huber hoped to make," and defendants ultimately did not rely upon his testimony. (See id.) Again, that the testimony was not actually used at trial is not dispositive. See In re Aspartame, 817 F. Supp. 2d at 617 (quoting Stevens, 2009 WL 117847, at *3). In response to Huber's argument, it was reasonable for AFS to believe Quinones' deposition to be necessary. We will deny the Livingston defendants' motion as to the court reporter charge for both Jackson's and Quinones' depositions.

Finally, the Livingston defendants dispute the Clerk's allowance of $230 in court reporter "appearance fees." (See Doc. 416 at 10). We conclude that this fee is fairly encompassed within Section 1920(2)'s allowance of taxation of transcript fees. See 28 U.S.C. § 1920(2). Unlike other expenses (like lodging or a *per diem*), the court reporter's appearance fee is directly related to their preparation of the transcript. See, e.g., Wesley v. Dombrowski, No. 03-4137, 2008 WL 2609720, at *2 (E.D. Pa. June 26, 2008) (collecting cases). We will deny the Livingston defendants' motion to this extent as well.

**III.     Conclusion**

We will grant in part and deny in part the parties' motions (Docs. 413, 415, 419) for review of the Clerk of Court's taxation of costs, as set forth in detail herein. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     February 4, 2021